FILED

2007 Jan-18  PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE MEGA LIFE AND HEALTH INSURANCE COMPANY, | } } } | |
| Plaintiff and Counterclaim Defendant, | } } } | CIVIL ACTION NO. 05-AR-1060-S |
| v. | } } | |
| DONALD D. PIENIOZEK, | } } | |
| Defendant and Counterclaimant. | } } | |

## MEMORANDUM OPINION

The court has for consideration the motion of plaintiff, MEGA Life and Health Insurance Company ("MEGA"), for summary judgment on its declaratory judgment action against defendant Donald D. Pieniozek ("Pieniozek"), for rescission of an insurance policy, and alternatively, for construction of the said insurance policy. Also before the court is the motion of defendant Pieniozek for summary judgment on MEGA's claims, and the motion of Pieniozek as counterclaimant for partial summary judgment on his counterclaim for breach of contract. Finally, the court has for consideration MEGA's motion for summary judgment on Pieniozek's counterclaims for breach of contract and bad faith.

### Summary Judgment Facts

On September 27, 2004, Kellie O. Pieniozek ("Mrs. Pieniozek") applied to MEGA for insurance on her life. Her written application sought a death benefit in the amount of $500,000, and additional

coverage in the form of a "waiver of premium" and "accidental death and dismemberment" ("AD&D").   UMS granted Mrs. Pieniozek's application and issued her a policy on November 8, 2004.   The policy had a death benefit of $500,000 and an AD&D rider with a death benefit of $300,000.   It named Pieniozek, Mrs. Pieniozek's husband, as beneficiary.   Mrs. Pieniozek paid $60.00 when the policy was issued. The annual premium was $785.00.   For aught appearing, Mrs. Pieniozek paid all applicable fees and premiums until her death.   In the AD&D rider, MEGA promised to pay Pieniozek $300,000 upon Mrs. Pieiozek's death if her death was "directly caused by an accidental bodily injury, independent of all other causes, which [was] supported by an autopsy (except in the case of drowning or of internal injuries revealed by an autopsy, or smoke inhalation due to fire)."   Neither the AD&D rider, nor any other part of the insurance policy or application, defined the word "autopsy."

Mrs. Pieniozek's application was filled out by Ahmed Waliagha, a MEGA agent, based on her answers to the questions Waliagha asked. According to Waliagha, Mrs. Pieniozek stated that she did not know her annual income, but that she earned $700 per week.   Also according to Waliagha, he then multiplied $700 by 50 weeks to arrive at a figure of $35,000 per year, and entered that figure in box 12 on the application, which was labeled "Annual Income."   This box was located at the top of "PART 1" of the form application, in

the same area as boxes asking for the applicant's name (box 1); date of birth, age, and birthplace (box 2); physical address (box 3); social security number (box 4); driver's license number (box 5); occupation (box 6); employer (box 7); sex (box 8); email address (box 9); and phone numbers (boxes 10 and 11). "PART 2" of the application requested information regarding, *inter alia*, the applicant's existing life-insurance policies, tobacco usage, risk behavior, and medical history.  The application contained the following statement: "I/we, the primary proposed insured and any additional insured or owner signing below by my signature set forth hereafter agree to the following: (a) All statements and answers in this application are complete and true to the best of my knowledge and belief."  Mrs. Pieniozek signed the application.  No one will ever know her version of the communication that lead to the entry of the $35,000 figure in box 12.

Mrs. Pieniozek died on December 14, 2004.  According to the Shelby County Coroner's Report of Death Investigation, Mrs. Pieniozek died in a single-car accident, when the car that she was driving ran into a ditch as she swerved to avoid hitting a deer. Pieniozek, the beneficiary, was also riding in the car when the accident occurred.  MEGA does not claim suicide or foul play.  Doug Ballard, Jr., the coroner who completed the coroner's report, indicated on his report that the cause of Mrs. Pieniozek's death was "closed head trauma" resulting from a motor vehicle accident.

Ballard also noted that Mrs. Pieniozek's body had an "open fracture to the head," in addition to "other injuries from [the motor vehicle accident]." One day after the accident, Pieniozek authorized Mrs. Pieniozek's body to be cremated, and the cremation took place on December 16, 2004. Pieniozek filed a claim under Mrs. Pieniozek's life-insurance policy with MEGA on January 17, 2005. MEGA thereafter initiated the investigation that led to this lawsuit.

During its investigation, MEGA learned that Mrs. Pieniozek worked for Snelling Personnel Services ("Snelling") in Birmingham, Alabama on five temporary assignments between August and October 2004, and that her total income from that job during that period was $670.13. Charmaine Hopkins, an employee in MEGA's underwriting department, says by affidavit that based on an annual income figure calculated by annualizing the income from Mrs. Pieniozek's Snelling employment, the maximum amount of life insurance Mrs. Pieniozek could have purchased was $60,300. Hopkins further said that had MEGA been aware of Mrs. Pieniozek's actual income, the underwriting department would have suggested another plan or declined the application altogether, because "the minimum face amount for the plan she applied for [was] $250,000." MEGA supports this position throughout its briefs with declarations and deposition testimony of its own employees; it does not point to any formal written underwriting guidelines.

Allegedly based on the results of its investigation and on its decision that an autopsy was not performed on Mrs. Pieniozek's body, MEGA declined to pay Pieniozek any insurance proceeds. On May 20, 2005, MEGA sued Pieniozek and Mrs. Pieniozek's estate, seeking a judicial determination that it is entitled to rescind the insurance policy, or in the alternative, that Pieniozek did not fulfill the autopsy requirement contained in the policy's AD&D rider, thus reducing the coverage by $300,000.00. Because "the estate of Mrs. Pieniozek" is not a suable entity, the lone defendant is Pieniozek, who was never made the administrator and/or personal representative of Mrs. Pieniozek's estate. The court earlier made clear that the only parties are the insurer and the named beneficiary, and that the appointment of an administrator is unnecessary to the decisions with respect to the parties' summary-judgment motions.

*Summary Judgment Standard*

In considering the parties' respective motions, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court can enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon Rule 56 consideration, the court does not

"weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted).

*Analysis*

## I. MEGA's Rescission-of-Policy Claim

MEGA seeks to rescind its insurance policy issued to Mrs. Pieniozek because Mrs. Pieniozek allegedly provided incorrect information regarding her annual income in the insurance-policy application. § 27-14-7, Ala.Code 1975 provides:

> (a)   All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
>    (1)   Fraudulent;
>
>    (2)   Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
>    (3)   the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

6

MEGA argues that based on §§ 27-14-7(a)(2) and (3), it may retroactively rescind the insurance policy.

In the first place, MEGA is precluded from invoking § 27-14-7 because neither Mrs. Pieniozek's application nor the policy that was issued to her required full and exact truth with respect to each response to each question on the application that Mrs. Pieniozek signed.  The application included only the following statement: "I/we, the primary proposed insured and any additional insured or owner signing below by my signature set forth hereafter agree to the following: (a) All statements and answers in this application are complete and true to the best of my knowledge and belief."  It did not provide that any misstatement or incorrect answer, no matter how innocent or trivial, may result in voidance of the entire agreement.  MEGA need not include in its application form the entire statutory framework in order to be allowed to invoke § 27-14-7, but as the drafting party, it was obligated to provide notice beyond the nebulous disclaimer contained in this application if it meant to maintain the right to rescind the contract based on any minor – or allegedly "material" – misstatement that had been made by the applicant.  Although this court is not bound by what it said in *State Farm General Ins. Co. v. Oliver*, 658 F. Supp. 1546, 1550 (N.D. Ala. 1987), *aff'd*, 854 F.2d 416 (11th Cir. 1988), it finds what it said quite persuasive.

Even if MEGA was not precluded from availing itself of § 27-14-7, it has not met and cannot meet the statute's express requirements.  In order to invoke § 27-14-7(a)(2), MEGA must "establish that a misrepresentation in the application was a material contributing influence that induced the insurer to issue the policy."  *Alfa Life Ins. Corp. v. Lewis*, 910 So.2d 757, 762 (Ala. 2005).  Under Alabama law, whether or not a misrepresentation is "material" is generally a jury question.  *Id.* (citations omitted).  The Alabama Supreme Court has recognized, however, that some misrepresentations, whether innocent or intentional, increase the risk of loss as a matter of law and are therefore material to the issuance of the policy.  *Id.*  MEGA argues that such is the case here, contending that Mrs. Pieniozek's "misrepresentations concerning annual income directly increased the risk of loss because the amount of insurance that [she] could receive was directly tied to her annual income."

The court disagrees with MEGA's contention that Mrs. Pieniozek's alleged misrepresentation was "material" as a matter of law.  As an issuer of a life insurance policy, MEGA's "risk of loss" was tied to the odds that Mrs. Pieniozek would perish.  MEGA has not explained, or even attempted to explain, how Mrs. Pieniozek's income, assuming she misrepresented it, had any bearing on the risk that it undertook.  It has not demonstrated how the chance of Mrs. Pieniozek dying, whether by natural causes or by

accident – and thus the odds that MEGA would have to pay – varied with Mrs. Pieniozek's income.  MEGA's conclusory statement that "the amount of insurance that Mrs. Pieniozek could receive was directly tied to her annual income" does not speak to the risk of loss.  Moreover, even if MEGA had such an absolute underwriting rule, it has not shared it with the court.  And if it has such a rule, it has provided no legitimate and believable rationale for it.

MEGA mistakes the import of the cases it cites.  In *Alfa Life Insurance*, the Supreme Court of Alabama held that an incorrect statement on a life-insurance policy application, wherein the applicant untruthfully denied that she had received a diagnosis of congestive heart failure, was "material" as a matter of law.  910 So.2d at 762.  There is no doubt that that insured's misrepresentation altered the risk to the life insurance company; *ceteris paribus*, a person with congestive heart failure most certainly has a higher risk of dying than does a person without that condition.  Such is not the case with a person who has a lower income than another.

In  *Nationwide Mutual Fire Ins. Co. v. Pabon*, another case relied upon by MEGA, the insured answered "no" to the question of whether she or any family member had "been sued, filed bankruptcy, had repossession/judgment within the last 7 years" [sic] on a homeowner's insurance-policy application.  903 So.2d 759, 767 (Ala.

2004).  The Supreme Court of Alabama concluded that because the insured knew of her husband's pending bankruptcy proceeding when she applied for the policy, her misrepresentation was "material" to the insurance company's acceptance of risk.  *Id.*  First, *Pabon* offers no guidance as to what constitutes a "material" misrepresentation on a **life-insurance** policy application.  Second, there is no doubt that the applicant's misrepresentation in *Pabon* increased the risk of loss undertaken by the insurer.  That a person's spouse is the subject of a bankruptcy proceeding could have significant implications on that individual's legal rights and responsibilities as a homeowner.  Bankruptcy proceedings could help to predict whether a person will continue to pay his or her mortgage, and could increase the prospect of litigation for the insurer or the likelihood of a spurious claim being filed by the policy holder.  There is a nexus between an applicant's knowledge of pending bankruptcy proceedings and a homeowner-insurance company's risk of loss, and such a nexus is simply lacking between Mrs. Pieniozek's alleged misrepresentation and MEGA's risk of loss.

Finally, in *Clark v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, the third and final case MEGA cites, the court found that concealment of arrests and/or convictions for prostitution, living off the earnings of a prostitute, and violations of the Florida Obscenity Law were material to an insurance company's decision to issue a farm-owner policy on a piece of jointly owned property to two

individuals.  465 So.2d 1135, 1139 (Ala. Civ. App. 1984).  The court in that case noted that the individuals had been arrested and/or convicted for matters involving moral turpitude, and held that such convictions, not disclosed to a prospective insurer, increase the insurer's risk of loss as a matter of law.  *Id.* at 1139-40.  This court is unable to see the similarity between prostitution or obscenity and an alleged misrepresentation of income, and therefore cannot extrapolate from the holding of *Clark* that the latter is, as a matter of law, "material."

With respect to § 27-14-7(a)(3), the burden rests on MEGA to prove that it in good faith would not have issued the policy to Mrs. Pieniozek if it had known about the alleged misrepresentation.  *See Oliver*, 1546 F. Supp. at 1553.  MEGA's own self-serving statement that it would not have issued the policy if it had been aware of Mrs. Pieniozek's actual annual income[1] is insufficient for it to meet that burden.  MEGA must provide what it has not provided, namely, a rational basis for how its risk varied with Mrs. Pieniozek's income, and it has wholly failed to do so.  *See id.*  As already pointed out, the rationale for MEGA's "underwriting policy," if one exists, is conspicuously absent.

---

[1] Whether Mrs. Pieniozek "misrepresented" her annual income to MEGA is reasonably disputed.  Although Mrs. Pieniozek did not have $35,000 worth of income for the year immediately preceding her application for the insurance policy, there is evidence to suggest that she, as a new college graduate who recently entered the full-time job market, truthfully provided her anticipated income to MEGA.  Moreover, it was the MEGA agent who provided the arithmetic.

11

Based on the evidence submitted, the court cannot conclude that Mrs. Pieniozek's supposed income misrepresentation was "material," or that MEGA would not have issued the policy if it had been aware of the supposed misrepresentation. Moreover, because there is no fathomable connection between Mrs. Pieniozek's income and the risk MEGA assumed when it issued her the life insurance policy, the court holds that the alleged misrepresentation was, as a matter of law, "immaterial" and does not present a matter for jury determination. MEGA's juxtaposition of application questions regarding annual income with those asking for mundane personal data – in a completely different section than questions regarding undeniably "material" issues such as risk behavior and medical history – reinforces this conclusion.  And when seeking a rescission under § 27-14-7(a)(3) it was MEGA's burden to prove that it would have reasonably declined Mrs. Pieniozek's insurance application if it had known of the alleged misrepresentation. It has not presented a prima facie case on that issue. Even MEGA admits that it may have suggested a lesser amount of coverage rather than declined the application. What MEGA would have done is purely speculative. Therefore, with respect to MEGA's rescission-of-policy claim, MEGA's motion for summary judgment will be denied and Pieniozek's motion for summary judgment will be granted.

## II. MEGA's Construction-of-Insurance-Policy Claim

MEGA contends that it is entitled to a declaration that Pieniozek cannot recover under the policy's $300,000 AD&D rider, because Pieniozek did not satisfy the AD&D rider's requirement that an "autopsy" be performed on the decedent's body.  MEGA says that Mrs. Pieniozek's death was not "supported by an autopsy," that this fact is undisputed, and that it is therefore entitled to summary judgment as to the accidental death rider.  MEGA emphasizes that Ballard, the individual who completed the coroner's report, testified that "[t]here was no autopsy done on [Mrs. Pieniozek]."

The court respectfully disagrees with MEGA.  The word "autopsy" was not defined in Mrs. Pieniozek's application or in the policy MEGA issued to her.  MEGA apparently wants to import the coroner's definition of "autopsy" into its own document.  However, neither MEGA's form application, nor the policy it issued to Mrs. Pieniozek, defined "autopsy" or stated expressly or by necessary implication that the terms of the rider incorporated by reference a coroner's definition of the word.  Meanwhile, Pieniozek offers three plausible definitions of "autopsy," which he easily obtained from reputable dictionaries or medical-knowledge websites:

1.   "An examination of a body after death to determine the cause of death or the character and extent of changes produced by disease."

2.   "A postmortem examination.  Also called a necropsy."

13

3.    "The examination of a dead body and is performed primarily to
      determine the cause of death and to identify disease states
      present."

There is no evidence that MEGA's AD&D rider – which MEGA
drafted – incorporated the Shelby County coroner's conception of
the term "autopsy."  Moreover, MEGA has not attempted to argue, and
cannot successfully argue, that an autopsy was not performed on
Mrs. Pieniozek's body according to any of the three alternative
definitions offered by the beneficiary.  Because MEGA drafted the
AD&D rider, the court must adopt Pieniozek's legitimate
understanding or interpretation of the disputed term.  *See Homes of
Legend v. McCollough*, 776 So.2d 741, 746 (Ala. 2000) (when other
rules of contract construction fail to resolve the ambiguity in a
contract term, the ambiguity must be resolved against the drafter
of the contract).  Accordingly, MEGA's motion for summary judgment
on its construction-of-policy claim will be denied, and Pieniozek's
motion for summary judgment on the same claim will be granted.

**III. Pieniozek's Breach-of-Contract Counterclaim**

Pieniozek, as counter-claimant, claims that MEGA breached its
contract by refusing to pay the benefits it promised under Mrs.
Pieniozek's life-insurance policy.  Both parties move for summary
judgment on this counterclaim.

MEGA strangely argues that Pieniozek's counterclaim for breach
of contract is premature, contending that it has not yet refused to

14

pay the claim but rather has sought a judicial determination of Pieniozek's rights under the insurance policy.  As discussed above, the insurance policy constituted a valid and enforceable contract, for which all relevant obligations were performed except for MEGA's payment of the insurance proceeds to the beneficiary.  Although it had a right to file a declaratory judgment action, MEGA is in breach.  *Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc.*, 814 So.2d 191 (Ala. 2001), the Alabama Supreme Court case upon which MEGA relies to argue otherwise, does not support MEGA's position that Pieniozek's breach-of-contract counterclaim is premature.  The relevance of that case is only that the Alabama Supreme Court "has long recognized the usefulness of declaratory judgments in insurance-policy disputes," nothing more.  *Id.* at 198.  With respect to Pieniozek's counterclaim for breach of contract, MEGA's motion for summary judgment will be denied and Pieniozek's motion for summary judgment will be granted.

## IV. Pieniozek's Bad-Faith Counterclaim

Pieniozek in his counterclaim also alleges that MEGA committed the tort of bad faith when it refused to pay him the proceeds of Mrs. Pieniozek's life-insurance policy.  Because Pieniozek's claim for breach of contract is fairly debatable, MEGA's motion with respect to this counterclaim will be granted.  *Burkett v. Burkett*, 542 So.2d 1215, 1217 (Ala. 1989).

DONE this 18th day of January, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE